# Carmichael *v.* The Bank of Pennsylvania.

The notary who fills up and certifies the protest, must present the bill himself, and note it for protest. It cannot be done by an agent.

It is a general rule that evidence cannot be given of the statements of one who is competent to testify.

Although it is not necessary to present a bill made payable at a given time after date, before its maturity, yet if presentment is made and acceptance refused, the bill must be protested and notice given to all the parties.

Where bills payable at a particular time were enclosed by letter to the drawee, before they were due, and he advised his correspondent that they were not accepted, it was held a sufficient presentment and refusal to accept.

Whether particular conversations amount to a waiver of notice of non-acceptance, is a question of fact for the jury, and not the subject of a charge by the judge.

This was an action of assumpsit, brought by the defendant in error, as the holder of three bills of exchange, against Carmichael as the endorser thereof. Said bills were drawn by J. Thompson, on Gabriel Tichenor, payable to J. L. Trask, in eighteen and twenty-four months after date, endorsed by said Trask and Carmichael and Lewis Evans, and dated at Philadelphia, September 16, 1822. These bills were, afterwards, by the holders, the plaintiffs, enclosed in a letter to Gabriel Tichenor, the cashier of the Bank of Mississippi, who was the drawee of the bills, with instructions to present them for acceptance, and after accepted, to return them to the holders in Philadelphia, which was all the instruction given. This letter was received in the latter part of the month of October, 1822; the drawee refused to accept, because he had no funds of the drawer in his hands, and so advised the holders by letter sent by the next mail to Philadelphia.

About three days after his refusal to accept, the drawee called on the drawer and informed him he had not accepted the bills, and could not, unless he was secured. The drawer promised security, and the drawee agreed to accept, provided it was furnished.

Tichenor was introduced as a witness on the trial, and stated that within ten or twelve days after the refusal to accept, he saw

Trask, one of the endorsers, and informed him that the bills were accepted. Trask said the security must be given, and that the bills must not be sent back.

It appeared that a mortgage was drawn, and a good deal of negotiation took place, but the security never was given.

Tichenor stated that he saw Carmichael for the first time after his refusal to accept, in December, 1822, and that he then related to Carmichael all that had transpired in relation to the bills of exchange.

Tichenor stated that after the death of Thompson, he told Carmichael he must make arrangements for the bills. That Carmichael said Trask considered that they were exonerated, but that he himself thought differently, there was no use of resisting, that the bills must be provided for, that Trask was between him and danger, he being the last endorser. This conversation occurred in 1825.

It appeared that a regular presentment and protest for non-acceptance was not made until about a year after the refusal of Tichenor to accept.

On the trial, one Beaumont was introduced, to prove that he as the agent of Bayington, the notary, presented the bills for acceptance, and noted the same for non-acceptance, on the same day. The introduction of this evidence was objected to, but admitted by the court.

The defendants offered Bayington to prove that Tichenor had declared when the bills were protested, that they had been in the possession of the Bank for collection, more than a year, and had a long time previously been presented for acceptance, and acceptance refused; but the court refused the testimony on the ground that Tichenor was in court to testify for himself.

Tichenor further stated, that Trask and Carmichael admitted to him in conversation, that when they endorsed the bills in Philadelphia, they knew that the drawee had no funds in his hands, but that he promised to provide them or give security, &c. that the bills would be accepted.

Mr. Chief Justice SHARKEY delivered the opinion of the court. This suit was instituted by the Bank of Pennsylvania as the

holder and endorsee of three bills of exchange, against Carmichael as the endorser. In the progress of the trial exceptions were taken, and the cause comes up by writ of error. As the case was tried in November, 1830, before the passage of the statute authorizing exceptions to be taken on the granting or refusing of a new trial, by embodying the substance of the testimony in the bill of exceptions, we have nothing to do but to examine the mere points raised at the trial. The testimony, although set out in the bill of exceptions, is no further a part of the case than to show the propriety of the charges which the court were requested to give the jury. It will only be necessary, therefore, to notice such parts of the evidence as were objected to.

The first objection was to the testimony of Beaumont, who was the agent or clerk of the notary whose name was signed to the protest. The witness stated that he as the agent presented the bills and noted them for non-acceptance. The sufficiency of such presentment and noting, seems to be a matter of doubt in England. In the 8th Ed. of Chitty's Treatise on Bills, a correspondence is given between the author and the notaries, in which they maintain the existence and legality of the custom of acting by their clerks. He gives some strong authorities to the contrary, but speaks himself of the question as a doubtful one. Chitty on Bills, 493. In his answer to the notaries, he refers to a *nisi prius* case, in which Lord Tenterden said it was a void protest; that it was a false certificate; that the notary had signed a paper stating *I* presented and demanded, &c. when it appeared in evidence that only his clerk had presented the bill. Lord Tenterden's opinion is certainly entitled to more respect than that of the notaries. Chitty, also, in the communication to the notaries, gives it as his opinion that the notary *himself* must make the demand. These opinions appear to accord with reason, and as we have been furnished with nothing to the contrary, we shall adopt them.

The defendant excepted to the opinion of the court in ruling out the admissions of Tichenor, the drawee, who was then in court ready to testify, which admissions he offered to prove by Bayington, the notary. It is a general rule that the statements of one who is competent to testify cannot be admitted. Tichenor was not only a competent witness for either party, but was then

48*

in court as the defendant's witness, and we can perceive no reason for admitting his statements made to Bayington to be given in evidence.

When the testimony was closed, the court was requested to charge the jury on several points of law by the defendant's counsel.  Such of these charges as were pertinent to the state of the case as made out, will be noticed, for a charge that is requested must be pertinent to the case, to constitute error in refusing it. This was the case with some that were asked of the court, and these need not be noticed.

The court was requested to charge the jury that if the Bank of the State of Mississippi was in possession of these bills in October, 1822, they should have been protested for non-acceptance, if the drawee, Tichenor, refused to accept them at that time.   This the court refused to give, but did charge that it would depend upon whether there was a legal presentment by a notary public, his agent under particular circumstances, or a justice of the peace, which alone constituted a legal presentment.   This charge was improperly refused by the court, and the charge given was also improper.   The books inform us that although it is not necessary to present a bill made payable at a given time after date before its maturity, yet if presentment be made and acceptance is refused, it is the duty of the holder to have the bill protested and give notice to all parties entitled to it.   It will become necessary, therefore, to enquire whether there was such a presentment in this case as to make a protest necessary, and in doing so, we shall necessarily have to determine who may make a presentment. .

Presentment is a term which requires but little explanation. Any thing which amounts to a notification of the holding of the bill, with a request to accept, accompanied by the bill, will amount to a presentment.   No formal presentment is necessary, or rather there is no form for a presentment.   The bill explains itself, and the object is understood in the mercantile community, when it is shown and an answer required.   The holder is the proper person to make the presentment, or he may do it by an agent.   It may be even made by a wrongful holder, and if acceptance be refused, a valid protest may be made which will

[Carmichael *v.* The Bank of Pennsylvania.]

enure to the benefit of the rightful owner of the bill. Chitty on Bills, 300, 8 ed. It is the notary's business to protest a bill after acceptance is refused, and although bills may be sometimes handed to the notary to make presentment in the first instance, this is not because it is necessary, but only in anticipation of the necessity of a protest. When it is known that the acceptance will not be given, the bill is handed to the notary, who again presents it merely for the purpose of making the protest. Was there such a presentment in this case as to make a protest necessary?

It appears by the evidence of Tichenor, and by a letter addressed to him as cashier of the Bank, that the bills were transmitted to him under date of the 26th of September, 1822, by the cashier of the Bank of Pennsylvania, and were received sometime in October, following, and by the next mail he advised the holders that he had not accepted the bills: but they were not regularly protested for non acceptance, until the 10th day of October, 1823.

As soon after the arrival of the bills and the answer returned, as the witness saw Carmichael, he informed him of what had taken place, but when this was, does not appear.

By the letter in which the bills were enclosed, Tichenor was requested to have them accepted, and return them. This letter being directed to and received by the drawee, covering the bills, was a good presentment, and the answer of the drawee that he had not accepted the bills, was equivalent to a direct refusal to accept. The letter to Tichenor as the cashier made him the agent for the purposes mentioned, and we have said that an agent may make presentment, but he could not present to himself. By the letter, the presentment was as complete as though the plaintiffs had made it verbally, and by the answer the refusal was as effectual as if made in any other manner. Considering these letters therefore as a presentment and refusal, the protest should have been then made, and the endorsers notified.

It seems that a subsequent promise was relied on as a waiver of protest and notice, and that the sufficiency of the promise was denied by the defendant's counsel. The court was therefore further requested to charge the jury that the declarations of the defendant, to wit, that " Mr. Trask considered that they were exonerated; that he himself thought differently; there was no use in

[Carmichael *v.* The Bank of Pennsylvania.]

resisting, that the bills must be provided for, that Trask was between him and danger," was not an absolute promise, and did not amount to a waiver in law; which charge the court refused to give, and we think very properly. To have given it would have been to charge on the weight of testimony. It is precisely analagous to the case of the Union Bank of Georgetown *v.* Magruder, reported in 7 Peters, 287; in which after stating the conversations, the plaintiff's counsel requested the court to charge that "such conversations amounted to a waiver of the objection of the want of demand and notice." Judge Story said it was properly refused, because it was a request to the court to instruct the jury upon a mere matter of fact, deducible from the evidence, and which it was the proper province of the jury to decide. He further says, "whether these (conversations) did amount to such waiver, was not matter of law, but of fact; and the sufficiency of the proof for this purpose was for the consideration of the jury." An enquiry into the sufficiency of the declarations of Carmichael, to amount to a waiver of protest and notice would have come fairly up on an application for a new trial, but the question was not so made in the court below, and is not so presented to us; and whatever we may think of the sufficiency of the promise, we must regard it as intangible in its present shape.

But for the errors first mentioned, the judgment must be reversed and the cause remanded.